# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| 7-ELEVEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIOLET SPEAR and VIANNA, INC., | ) | Case No. 10-cv-6697 |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| v. | ) | |
| | ) | |
| 7-ELEVEN, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff 7-Eleven, Inc. filed suit against Defendants Violet Spear and Vianna, Inc. (collectively "Defendants") seeking legal and equitable relief from Defendants concerning the termination of a franchise agreement between the parties. In turn, Defendants have filed counterclaims alleging that 7-Eleven's conduct violated § 6 of the Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/6, and § 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, and also constituted common law fraud.

On January 31, 2011, Plaintiff filed a motion to dismiss Defendants' counterclaims [41]. Defendants responded, through counsel who has since withdrawn from the case, and Plaintiff has filed its reply. Since that time, on March 3, 2011, the Court granted Plaintiff 7-Eleven's motion for a preliminary injunction and, among other things, ordered Defendants to immediately surrender possession and control of the store. The Court also has found by clear and convincing evidence that Defendants were in contempt of the Court's March 3 preliminary injunction order

and has imposed on Defendants a remedial/compensatory sanction. In addition, Plaintiff moved for the entry of default against Defendant Vianna, which the Court granted, and Plaintiff has requested that default judgment be entered. With the entry of default, the Court dismissed the counterclaims asserted by Defendant Vianna. Defendant Spear's counterclaims remain, and the Court now addresses Ms. Spear's allegations that 7-Eleven made various pre-contract misrepresentations three years ago that induced her to enter into the Franchise Agreement.

**I.     Background**

Plaintiff 7-Eleven is the owner of certain federally registered trademarks and service marks, including 7-Eleven®, which are used in connection with the operation of authorized 7-Eleven stores. 7-Eleven grants franchises to own and operate 7-Eleven Stores to qualified persons. Defendant Vianna is a former 7-Eleven franchisee that operated a 7-Eleven store in Evanston, Illinois. Defendant Violet Spear is the owner of Vianna.

Pursuant to written franchise agreements, 7-Eleven licenses franchisees to operate under the 7-Eleven marks, and it leases the store premises to them, together with the fixtures, equipment, and signs needed to operate the store. 7-Eleven also provides financing to its franchisees, including financing for the store's inventory. According to 7-Eleven, and not disputed by Defendants, store inventory and other assets are subject to a perfected security interest in 7-Eleven's favor, which secures all the indebtedness of the franchisees to 7-Eleven. In exchange for the license and lease, and for various other services (*e.g.*, advertising, merchandising assistance, bookkeeping, certain maintenance, payment of utility expenses, indemnification for specified losses), the franchise agreement entitles 7-Eleven to receive a specified percentage of the gross profits of the ongoing operation of the store. 7-Eleven asserts that this percentage of gross profits is its primary benefit under the franchise agreement.

On March 14, 2008, 7-Eleven and Defendant Spear entered into a written franchise agreement, pursuant to which 7-Eleven (i) granted Vianna a franchise, for an initial 15 year term, to operate a 7-Eleven store at 817 Davis Street in Evanston, Illinois (the "Store") and (ii) licensed Spear to use the 7-Eleven Marks in operating the franchise. Spear assigned the franchise agreement to Vianna, a corporation of which she was sole shareholder, but remained liable for all of Vianna's obligations under the franchise agreement pursuant to a written guaranty.

In addition to the obligations outlined above, Defendants agreed to operate their 7-Eleven store in compliance with all laws, and in conformity with 7-Eleven's standards and specifications. Vianna agreed to maintain a minimum net worth of $15,000 in the Store at all times and further agreed that failure to maintain the required net worth was a material breach of the Franchise Agreement. Vianna also agreed that in the event that 7-Eleven terminated the Franchise Agreement for cause, Vianna would, among other things, (i) immediately surrender the Store premises and all 7-Eleven equipment, (ii) transfer final inventory of the Store, (iii) deliver to 7-Eleven its operations guides and all trade secrets and confidential information, and (iv) comply with the franchise agreement's post-termination obligations. Vianna also agreed that, upon termination, it would immediately cease using the 7-Eleven Marks.

Although Vianna agreed in the Franchise Agreement to maintain a minimum net worth of $15,000 at all times, at the end of March, 2010, Vianna's net worth in the Store was about $6,500, a shortfall of nearly $8,500. According to Defendant Spear, when she and her daughter questioned 7-Eleven's field consultant regarding why the shortfall had occurred, he responded that it could be due to several factors, but that this Store always ran $20,000.00 short each month. See Spear Affidavit at ¶ 13.

By letter dated April 28, 2010, 7-Eleven notified Vianna that it had three business days to increase the net worth to the required level, as well as to cure another monetary default under the Franchise Agreement. Vianna cured the material breaches which were the subject of the April 28, 2010 notice of material breach, but soon thereafter again failed to meet the minimum net worth requirement under the Franchise Agreement. Vianna's May 2010 financial statements indicated that the Store's net worth was only $6,775.34, instead of the required $15,000. In June, the shortfall from the minimum net worth requirement was $27,000, and in July, it was more than $40,000. As a result of Vianna's failure to maintain the required minimum net worth, 7-Eleven sent a notice of material breach to Vianna dated August 27, 2010, advising Vianna that it had three business days to increase its net worth to the required level or 7-Eleven would terminate the Franchise Agreement. Defendants did not cure the minimum net worth material breach. At the end of August, the Store had a negative net worth of $43,962.09, which was approximately $59,000 under the minimum net worth required under the Franchise Agreement. 7-Eleven extended the termination date in order to allow Vianna more time to cure the net worth deficiency and preserve its franchise rights, but as of the end of September 2010, Vianna was still nearly $40,000 under the required minimum net worth. 7-Eleven terminated the Franchise Agreement effective September 27, 2010; however, Defendants refused to surrender possession of the Store, equipment, and inventory and continued to use the 7-Eleven marks in connection with the operation of the Store.

On March 3, 2011, the Court granted Plaintiff 7-Eleven's motion for a preliminary injunction [8] and, among other things, ordered Defendants to immediately surrender possession and control of the store, the inventory and proceeds of the store, and all signs, marketing materials, or other materials containing any of the 7-Eleven Marks and enjoined Defendants from

using the 7-Eleven Marks or passing off any of their products or services as those of 7-Eleven's. When Defendants did not comply with the Court's March 3 order, the Court found them in contempt and imposed a remedial/compensatory sanction. The Court also entered default against Defendant Vianna and dismissed the counterclaims asserted by Defendant Vianna. Thus, all that remains of Defendants' counterclaims are those asserted by Defendant Spears.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

At the heart of all of Defendant Spear's counterclaims lies the allegation that Defendants received less information than they wanted regarding the store prior to entering into the franchise

5

agreement. Specifically, she alleges that 7-Eleven failed "to provide material information concerning the historical performance of [the Davis Street store] to prospective franchisee, Violet Spear, in connection with her consideration and application to franchise the Store from 7-Eleven." Def.'s Counterclaim at p. 1. Spear further alleges that 7-Eleven had knowledge that the Davis Street store was "operating unprofitably and/or below its projections and/or expectations or was otherwise performing inconsistent with the averages set forth in the Franchise Offering Circular provided to Violet Spear during the time it was initially opened and operated by 7-Eleven to such time as Violet Spear began operating the Store in May 2008." *Id.* at pp. 1-2. In other words, Defendant Spear premises her counterclaims on the argument that 7-Eleven was required to disclose financial information concerning the Davis Street store because that particular store's financial performance supposedly was "below average" compared to the average sales and earnings for franchised 7-Eleven stores in the region.

As a franchisor, 7-Eleven is subject to a comprehensive federal regulatory scheme. The Federal Trade Commission ("FTC") promulgated the FTC Franchise Rule, 16 C.F.R. Part 436 *et seq*. (the "Franchise Rule"), in 1978 to prevent deceptive and unfair practices in the sale of franchises. See 72 Fed. Reg. 15,444, 15,445 (March 30, 2007) (Statement of Basis and Purpose ("SBP") to Amended Rule). The Franchise Rule is a pre-sale disclosure rule that requires specified disclosures through a disclosure document that must be provided to prospective franchisees prior to the offer or sale of a franchise. It requires franchisors to disclose material information to prospective franchisees on the theory that informed investors can determine for themselves whether a particular franchise transaction is in their best interests. *Id*. The North American Securities Administrators Association ("NASAA"), an association of state securities regulators, adopted its own set of requirements for pre-sale franchise disclosure, known as the

"UFOC Guidelines." See Uniform Franchise Offering Circular—1993 Guidelines. The FTC accepts satisfaction of the UFOC Guidelines as compliance with the Franchise Rule. See 60 Fed. Reg. 51,895 (Oct. 4, 1995).

The first problem with the position asserted by Defendant in her counterclaims is that 7-Eleven was not required by the Franchise Disclosure Regulations to disclose earnings information for any of its stores, let alone the store that Defendants selected to franchise. The Franchise Rule *permits* a franchisor, at its option, to make certain "earnings claims," which are defined in the Franchise Rule as any disclosures of "a specific level of sales, income, gross or net profits of existing outlets (whether franchised or company-owned) of the franchised business," if "a reasonable basis exists for such representation and the franchisor has in its possession material which constitutes a reasonable basis for such representation * * *." 16 C.F.R. Part 436.1(c) (2003) (emphasis added). Under the UFOC Guidelines, if a franchisor makes such a disclosure, it is required to be included in the Uniform Franchise Offering Circular ("UFOC") that the franchisor provides to the franchisee. Specifically, Item 19 of the UFOC Guidelines provides, in part: "An earnings claim made in connection with an offer of a franchise must be included in full in the offering circular and must have a reasonable basis at the time it is made." The UFOC Guidelines define an "earnings claim" as "information given to a prospective franchisee by, on behalf of or at the direction of the franchisor or its agent, from which a specific level or range of actual or potential sales, costs, income or profit from franchised or non-franchised units may be easily ascertained." *Id*. The UFOC Guidelines make it clear that an earnings claim is an optional, not a required, disclosure and that the nature of the claim is left to the franchisor: "*An earnings claim is not required* in connection with the offer of franchises; if made, however, its presentation must conform with this Item 19." *Id*. (emphasis added).

7-Eleven elected to include an earnings claim in Item 19 and Exhibit H to its UFOC. The earnings claim that 7-Eleven made was a disclosure of "the most recently available annual averages of the actual sales, earnings and other financial performance (before applicable franchisee income taxes, if any) of franchised 7-Eleven stores in each Market Area in this state (*excluding stores that the same franchisee did not operate for the full calendar year*)." See Item 19 of 7-Eleven's UFOC, a copy of which is attached to Defendants' Counterclaim as Exhibit A (emphasis added). Although 7-Eleven provided an earnings claim in its UFOC, its UFOC made clear that:

> THE FINANCIAL STATEMENTS ATTACHED AS EXHIBIT H CONTAIN HISTORICAL AVERAGES OF SPECIFIC FRANCHISES. YOU SHOULD NOT CONSIDER ANY OF THE NUMBERS TO BE ACTUAL OR POTENTIAL SALES, EARNINGS OR OTHER FINANCIAL PERFORMANCE THAT YOU WILL ATTAIN. WE DO NOT REPRESENT THAT ANY FRANCHISEE CAN EXPECT TO ATTAIN THESE SALES, EARNINGS OR OTHER FINANCIAL PERFORMANCE.

*Id*. The UFOC also stated that:

> Many factors will affect the actual sales and earnings of a store you franchise, including your own efforts, ability and control of the store, as well as factors over which you have no control. Therefore, you should not predict any future results of a store based on historical operating summaries for any particular store or averages for a group of stores that we may provide. Actual results vary from store to store, and we cannot estimate the results of any particular store.

*Id.* 7-Eleven's UFOC also made clear that it would provide a prospective franchisee with actual operating results for specific stores, but only if that store had been operated for at least one year:

> *If a store you want to franchise has operated for at least the last 12 months*, we will also give you a supplemental disclosure for that store. The supplemental disclosure, called 'Here Are The Facts,' shows the actual operating results of the store for the last 12 months. We will prepare the supplemental disclosure in the same manner, and using the same information, as the financial statements attached as Exhibit H. You should not use the supplemental disclosure to predict any results at a particular store you franchise.

*Id.* (emphasis added). Based on the allegations in Defendant's counterclaims, this is precisely what 7-Eleven told Ms. Spear on at least two occasions in response to her requests for sales figures for the Davis Street store, a store that had been operating for less than one year. See Def.'s Counterclaim at ¶¶ 11-12. Similarly, Ms. Spear was given store-specific information concerning other stores in which she had expressed interested that were not new stores. *Id.* at ¶ 11. By all accounts, 7-Eleven followed the disclosure scheme that was explicitly described in the UFOC.

Despite the reservations contained in the UFOC, Defendant claims that 7-Eleven violated both the IFDA and the ICFA and defrauded her by not providing actual historical sales information for the Davis Street store. Yet 7-Eleven was not required to include the sales of the Davis Street store in the earnings claim, because the Franchise Disclosure Regulations do not impose an obligation on a franchisor to disclose such information. Moreover, in connection with making its earnings claim, 7-Eleven's UFOC specifically disclosed that it was *not* providing information related to stores that had not been operating for at least twelve months, such as the Davis store, and 7-Eleven further informed Ms. Spear twice in January 2008 (prior to the signing of the franchise agreement) that 7-Eleven would not provide such information. See Counterclaim at ¶¶ 11-12. In short, while Ms. Spear got less information than she requested, 7-Eleven's inclusion of an earnings claim disclosing the annual averages of the actual sales for stores that had been operating for at least twelve months and willingness to provide actual sales for specific stores that had been operating for at least twelve months, but omitting information relating to stores that had not been operating for at least twelve months, complied with the Franchise Disclosure Regulations and, in turn, complied with the IFDA and did not violate the

ICFA.[1] See 815 ILCS 705/16 ("The disclosure statement required under this Act shall be prepared in accordance with the Federal Trade Commission rule entitled Disclosure Requirements and Prohibitions Concerning Franchising, 16 C.F.R. Part 436, as it may be amended, the Guidelines promulgated by the North American Securities Administrators Association, Inc., as they may be amended, and the rules adopted by the Administrator pursuant to Section 32 of this Act."); 815 ILCS 505/10b(1) ("Nothing in this Act shall apply to any of the following * * * Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."); see also *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001) ("the CFA will not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations. If parties are doing something specifically authorized by federal law, section 10(b)(1) [the exemption provision of the ICFA] will protect them from liability under the CFA."); *Price v. Philip Morris, Inc*, 219 Ill.2d 182, 245, 249 (2005) ("this court [has] held that full compliance with applicable disclosure requirements is a defense, under section 10(b)(1), to a claim of fraud based on the failure to make additional disclosures.").[2]

---

[1] Defendants also have failed to plead how this transaction is the type of consumer transaction that the ICFA is intended to protect. As at least one court in this circuit has held that franchisees such as Defendants "are not consumers in the sense that courts have come to interpret that term under the statute." *Shipman v. Case Handyman Servs., LLC*, 446 F. Supp. 2d 812, 814 (N.D. Ill. 2006).

[2] Defendants argue that the exemption in Section 10(b)(1) of the ICFA does not apply because even if the Item 19 disclosure of average sales figures for franchised stores in operation for at least twelve months conformed to the disclosure regimen authorized by the FTC Act, the disclosure regulations specify what 7-Eleven can do in the UFOC but do not authorize supplemental disclosures such as the ones 7-Eleven provided for specific stores. Def.'s Resp. at pp. 10-11. However, Defendants are incorrect. The UFOC Guidelines specifically authorized 7-Eleven to make supplemental earnings claims: "If a franchisor has made an earnings claim in accordance with this Item 19, the franchisor may deliver to a prospective franchisee a supplemental earnings claim directed to a particular location or circumstance, apart from the offering circular." Because 7-Eleven's disclosures complied with the federal regulatory scheme, 7-Eleven's actions did not violate the ICFA as a matter of law. See *Morequity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 894 (N.D. Ill. 2000) (holding that "the Consumer Fraud Act does not extend disclosure

In her response brief, Defendant claims that she should have been provided with "information on the subject store's [allegedly] historical poor performance which information was necessary to correct a misimpression created by providing its prospective franchisee with a FOC containing earnings claims, knowing that those earnings claims were not indicative of the actual performance of the subject store." Def.'s Resp. at p. 7. The logical fallacy of Defendant's argument is that the "earnings claim" was not offered by 7-Eleven as indicative of the actual performance of the subject store, nor as the prospective performance of *any* store. Indeed, Defendant Spear acknowledges as much in stating that "the earnings claim was intended to enable the prospective franchisee to 'easily ascertain' the specific level or range of 'actual or potential sales, costs, income or profit,' *regarding historical performance averages of stores in the relevant market*." *Id.* at 8 (emphasis added). Ms. Spear was informed that information concerning the Davis Street store was not included in the averages presented in Item 19, that they could not rely on the Exhibit H averages as representing actual or potential sales, earnings or other financial performance that they would attain, and that they would not receive a supplemental disclosure for the store because it had not been open for at least twelve months.

Defendant also contends that while the information contained in Exhibit H as to store average sales and income may not have been false, 7-Eleven was under a duty to make more representations than it made because the information concerning the Davis Street store was necessary to save the statements made in Exhibit H from being misleading. Def.'s Resp. at pp. 11-12. Defendant's argument assumes that Item 19 and Exhibit H said or implied that the store that she was franchising had sales or profits that conformed in some unspecified way to the stores in the disclosure. However, Item 19 and Exhibit H did not say or imply anything of the

---

requirements beyond those already required by the federal disclosure statutes" and that compliance with the Truth In Lending Act is a defense to liability under the ICFA).

sort. To the contrary, 7-Eleven advised that the information was historical information (indeed, historical information predating the opening of the store that Defendants were proposing to franchise), did not include information from the store that Defendants were proposing to franchise, and that Defendants should not consider it to predict the financial performance of their store if they selected it. As a result, the earnings claim in Item 19 and Exhibit H was only "misleading" if Defendants ignored the express terms of the earnings claim and made projections based upon their own assumptions concerning the historical information of other stores. Because they could not have done so consistent with the disclaimers in the Franchise Agreement and the UFOC, Defendant Spear cannot claim that she or Vianna was misled by 7-Eleven's policy of not including stores that were open for less than twelve months in the financial averages in the earnings claim and not furnishing a supplemental disclosure for those stores. See *Sherman v. Ben & Jerry's Franchising, Inc.*, 2009 WL 2462539, at *5 (D. Vt. Aug. 10, 2009) (holding that the plaintiff could not state a claim against the franchisor for fraudulently withholding information from Item 19 of its UFOC in light of the disclaimers and warnings in the UFOC which made any reliance on the figures in Item 19 unjustified); *Siemer v. The Quizno's Franchise Company LLC*, 2008 WL 904874, at *7 (N.D. Ill. March 31, 2008) (dismissing plaintiffs' claim that the franchisor committed fraud by failing to disclose key facts to them in light of the disclaimers in the UFOC and the franchise agreement).

Defendant Spear further argues that because Defendants would not have entered into the transaction at all had they known of the subject Store's allegedly poor financial performance, the disclaimers in the UFOC and Franchise Agreement are somehow inoperative because the information—or the lack thereof—was material to Defendants' investment decision. Def.'s Resp. at p. 11. But 7-Eleven was not under an obligation to disclose every piece of information that

may have been material to Defendants' investment decision. It was obligated to provide disclosure in accordance with the Guidelines. See *America's Favorite Chicken Co. v. Cajun Enters., Inc*., 1996 WL 306350, at *3 (E.D. La. June 5, 1996) (holding that a franchisor has no duty to go beyond the disclosure requirements required by the UFOC Guidelines). While Defendants argue that they would not have entered into the Franchise Agreement had they known of the Store's allegedly "poor financial performance," they were advised multiple times that they were not receiving the Store's financial performance information and they still chose to acquire that store rather than one for which full information was available to them.

Finally, Defendant's counterclaims do not allege that any of the disclosures set forth in 7-Eleven's UFOC were inaccurate; rather, the counterclaim simply alleges that 7-Eleven refused to give Defendants the additional information that they wanted. It was not deceptive or fraudulent for 7-Eleven not to give Defendants exactly what 7-Eleven told Defendants that they would not receive (and what 7-Eleven had no duty to provide in any event). Because 7-Eleven had no duty to disclose the historical financial performance of the Davis Street store, Defendant's common law fraudulent omission claim suffers the same fate as her IFCA and ICFA claims. See *Noah v. Enesco Corp*., 911 F. Supp. 299, 303 (N.D. Ill. 1995) (A "failure to disclose the material fact must occur under circumstances which create a duty to speak.").

## III. Conclusion

For the reasons set forth above, the Court grants Plaintiff 7-Eleven's motion to dismiss Defendant Spear's counterclaims [41]. The Court previously dismissed Defendant Vianna's counterclaims [72] and therefore no counterclaims remain pending.

Dated: June 23, 2011  _____
Robert M. Dow, Jr.
United States District Judge