**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| 7-ELEVEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIOLET SPEAR and VIANNA, INC., | ) | Case No. 10-cv-6697 |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff 7-Eleven, Inc. filed suit against Defendants Violet Spear and Vianna, Inc. (collectively "Defendants") seeking legal and equitable relief from Defendants concerning the termination of a franchise agreement between the parties. 7-Eleven terminated the agreement effective September 27, 2010, and demanded possession of the store, equipment, and inventory as provided in the franchise agreement and related agreements. Vianna and Spear, Vianna's owner and the guarantor of Vianna's obligations under the franchise agreement, continued to operate the store and hold the store out to the public as an authorized 7-Eleven store. The Court granted 7-Eleven's motion for preliminary injunction on March 3, 2011, ordering Defendants, among other things, to immediately surrender possession and control of the store to 7-Eleven and cease using 7-Eleven's trademarks. Defendants refused to comply with the preliminary injunction order and only surrendered possession of the store on March 9, 2011, after the Court held that they were in contempt of the preliminary injunction order.

Plaintiff moved for summary judgment [102], which the Court granted. Plaintiff then submitted a supplemental memorandum [121], seeking attorneys' fees and costs against

Defendants. For the reasons set forth below, the Court grants Plaintiff's supplemental request for attorneys' fees.

## I. Background

The Court set forth in detail the factual background in the Court's May 11, 2012 opinion granting summary judgment in favor of 7-Eleven and only briefly recounts that history here. 7-Eleven is the owner of certain federally registered trademarks and service marks, including 7-Eleven® (the "7-Eleven Marks"), which are used in connection with the operation of authorized 7-Eleven Stores. Vianna is a former 7-Eleven franchisee that operated a 7-Eleven Store in Evanston, Illinois. Violet Spear is the owner and sole-shareholder of Vianna. On March 14, 2008, 7-Eleven and Spear entered into a written franchise agreement (the "Franchise Agreement"), pursuant to which 7-Eleven granted Spear for an initial fifteen (15) year term, a franchise to operate a 7-Eleven store at 817 Davis Street in Evanston, Illinois (the "Store") and licensed Spear to use the 7-Eleven Marks in operating the franchise (the "Franchise Agreement"). Spear assigned the Franchise Agreement to Vianna, a corporation of which she was sole shareholder, but remained liable for all Vianna's obligations under the Franchise Agreement pursuant to a written guaranty (the "Guaranty"). Spear also entered into a security agreement with 7-Eleven (the "Security Agreement"), under which she granted 7-Eleven a security interest in the equipment, fixtures, goods, inventory and proceeds of the Store.

As set forth in the Court's memorandum opinion and order granting summary judgment in favor of 7-Eleven, Defendants breached the Franchise Agreement, Guaranty, and Security Agreement in several ways. Then, when 7-Eleven terminated the Franchise Agreement, Defendants did not surrender possession of the Store, equipment and inventory, and continued to use the 7-Eleven Marks in connection with the operation of the Store. As a result, 7-Eleven filed

its complaint in this action on October 18, 2010 and its motion for preliminary injunction on October 19, 2010. On March 3, 2011, the Court granted 7-Eleven's motion for preliminary injunction and ordered Defendants to, among other things, (i) immediately surrender possession and control of the premises and facilities at 817 Davis Street in Evanston, and (2) cease using 7-Eleven's trademarks and service marks. [50 at p. 15-16] Defendants did not immediately comply with the March 3 preliminary injunction order, and the Court found them in contempt for violating the order. Defendants turned over possession and control of the Store on March 9, 2011.

**II.     Analysis**

7-Eleven maintains that it 7-Eleven is entitled to recover from Spear the attorneys' fees and costs 7-Eleven incurred in this matter pursuant to her Personal Guaranty and Assumption Agreement ("Guaranty"). Spear agreed as follows in her written Guaranty:

> Further, each of the undersigned Guarantors hereby personally and unconditionally guarantees to 7-Eleven and our successors and assigns the full and prompt payment when due of any and all indebtedness and liabilities, and the full and prompt performance of all obligations, of every nature and kind, of Franchisee under the Franchise Agreement, and every balance and part thereof, whether now owing or due, or which may hereafter from time to time, be owing or due, either direct or indirect, absolute or contingent, and however, heretofore or hereafter created, arising or evidenced, and agrees to pay, in addition thereto, all costs, expenses, and reasonable attorneys' fees at any time paid or incurred by us in endeavoring to collect said indebtedness and liabilities or obtain performance of said obligations [under the Franchise Agreement], or any part thereof and in and about enforcing this Guaranty.

Under Illinois law, Spear's Guaranty is enforceable in accordance with its express provisions. See *FIMSA, Inc. v. Unicorp Fin. Corp.*, 759 F. Supp. 1297, 1300 (N.D. Ill. 1991) ("Under Illinois law defendants' Guaranties are contracts legally enforceable in accordance with their express provisions.") (citing *Citicorp Sav. of Illinois v. Ascher*, 554 N.E.2d 409, 411 (Ill. App. Ct. 1st Dist. 1990). Spear expressly agreed in her Guaranty to pay to 7-Eleven the reasonable

3

attorneys' fees and costs it incurred in collecting any liabilities or obtaining performance of any obligations under the Franchise Agreement or the Guaranty.[1]

Spear's response brief ignores her Guaranty entirely. Similarly, nowhere in Spear's response does she argue that the attorneys' fees and costs that 7-Eleven seeks to recover in this action were not incurred seeking to collect amounts due and owing from Defendants to 7-Eleven under the Franchise Agreement and Guaranty and to obtain Defendants' compliance with their post-termination obligations under the Franchise Agreement and Guaranty. Nor does Spear challenge the reasonableness of the amount of attorneys' fees that 7-Eleven seeks, except that she requests that the amount 7-Eleven seeks for the time period that she was representing herself *pro se* "be waived or reduced" because, according to Spear, it should not have taken much "skilled lawyering" to litigate against a *pro se* party.

Contrary to Spear's argument, the amount of attorneys' fees that 7-Eleven incurred in this matter was actually multiplied as a result of Spear's decision to proceed *pro se*. The Court provided Spear with several opportunities to retain a new attorney after she agreed to part ways with her previous attorney in March 2011, but Spear never took advantage of any of those opportunities, and instead used those opportunities simply as means to delay the proceedings and cause 7-Eleven to incur more attorneys' fees on wasted court appearances. For example, after the case was referred to Magistrate Judge Brown for a settlement conference (upon Spear's request), and because Spear represented to Judge Brown that she would prefer legal representation at the settlement conference, Judge Brown continued the matter on two occasions in an attempt to locate an attorney who could represent Spear solely for purposes of the settlement conference. But after Judge Brown located an attorney who was willing to represent

---

[1] Spear's obligations under the Guaranty are independent of whether Spear or Vianna would be required to reimburse 7-Eleven for its attorneys' fees and costs under the Lanham Act.

4

Spear at the settlement conference, Spear failed to contact the attorney. The settlement conference was eventually scheduled during the third status hearing before Judge Brown—months after the case was referred to Judge Brown.

In any event, and as set forth in the monthly statements reflecting the legal services that DLA Piper rendered on 7-Eleven's behalf, almost 75% of the amount of the attorneys' fees that 7-Eleven seeks to recover from Spear in this matter (around $175,000 of the $233,263.35) were incurred prior to April 2011—when Spear was represented by counsel. Moreover, 7-Eleven is not seeking to recover any of the attorneys' fees that it incurred in this matter in 2012, even though it is contractually entitled to recover those fees from Spear, so the amount of fees 7-Eleven seeks to recover is already discounted.

The remaining portions of Spear's response fare no better but are consistent with Spear's recalcitrant behavior throughout this litigation. First, it should be noted that Spear's attorney did not withdraw from the case "in mid-stream" and with "no answer to the barrage of motions." [Docket No. 122 at p. 1.] At the time Spear's attorney withdrew in March 2011, her attorney had already, among other things, (1) filed an answer and counterclaim on her behalf, (2) filed an opposition to 7-Eleven's motion for preliminary injunction, (3) filed an opposition to 7-Eleven's motion to dismiss Spear's counterclaims, and (4) appeared in Court on two occasions regarding 7-Eleven's first motion for rule to show cause why Spear should not be held in contempt and sanctioned. To the extent that Spear attempts to imply that she was somehow an innocent victim in this proceeding who could not obtain an attorney despite her best efforts, the history of this case reveals a much different story. As the Court noted in its March 8, 2011 minute entry, there was a "mutual agreement for a parting of the ways between Defendants and their current counsel." [Docket No. 58.] Moreover, and as mentioned above, the Court provided Spear with

numerous opportunities to obtain new counsel in this matter, but Spear failed to do so, presumably for the very same reason that she ended her relationships with her previous attorneys: she disagreed with the legal advice that those attorneys were providing to her. Finally, the Court did not order Spear to proceed by herself or state that she "should decide whether to get an attorney for the corporation." [Docket No. 122 at p. 2.] To the contrary, the Court made it clear to Spear (on several occasions) that she may proceed *pro se*, but that Vianna was required by Supreme Court precedent to have an attorney if it wished to proceed with the litigation. See *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–02 (1993) ("a corporation may appear in the federal courts only through licensed counsel"); *American Taxi Dispatch, Inc. v. American GSS Limo, Inc.*, 2011 WL 291095, at *1 (N.D. Ill. Jan. 27, 2011). [Docket Nos. 58 and 110.]

The Court has reviewed 7-Eleven's billing invoices. From the Court's review, it appears that all of the attorneys' fees that 7-Eleven incurred from October 2010 through December 2011 were incurred seeking to collect amounts due and owing from Defendants to 7-Eleven under the Franchise Agreement and Guaranty and to obtain Defendants' compliance with their post-termination obligations under the Franchise Agreement and Guaranty including, without limitation, Defendants' obligations to surrender possession of their former franchised store to 7-Eleven and cease using 7-Eleven's trademarks. Although Spear could have avoided having this lawsuit filed by voluntarily surrendering possession of her former franchised 7-Eleven store and abiding by her other post-termination obligations (including, without limitation, her obligations to pay all amounts owed to 7-Eleven and cease using 7-Eleven's trademarks), she did not do so. Instead, she refused to surrender possession of her former franchised store and forced 7-Eleven to file this action, pursue it at some length, and incur substantial attorneys' fees and costs in

6

order to obtain her compliance with her contractual obligations. 7-Eleven incurred attorneys' fees, among other things, (1) in reviewing the legal file maintained by 7-Eleven, (2) interviewing witnesses, (3) preparing its complaint, (4) preparing its motion for preliminary injunction, supporting memorandum of law, reply brief, and supporting declarations and exhibits, (5) preparing its memorandum of law in support of its motion to dismiss Defendants' counterclaims, as well as its reply brief, (6) preparing two motions to hold Defendants in contempt of court for disobeying the injunction, (7) preparing or responding to various other motions, (8) preparing for and attending the settlement conference (which Defendants requested) with Magistrate Judge Brown, and (9) numerous court appearances.

7-Eleven further represents that the billing rate for each attorney who worked on this matter on behalf of 7-Eleven is reasonable and consistent with the hourly fees that DLA Piper LLP (US) charges other non-contingent clients in matters of similar substantive magnitude and complexity, and are comparable to the rates charged by lawyers in the community of reasonably comparable skill, experience and reputation in Chicago, Illinois. Pursuant to these rates, as set forth in 7-Eleven's moving papers, 7-Eleven incurred $233,706.91 in attorneys' fees and costs in this matter from October 2010 through and including December 2011. As this Court recognized in its May 11, 2012 Memorandum Opinion And Order, because Defendants failed to respond to 7-Eleven's Statement of Undisputed Facts, those facts are deemed admitted. [Docket No. 116 at p. 2, n. 1; see also Local Rule 56.1(b).] Furthermore, Defendants have failed to challenge either the hourly rate or the hours expended in responding to Plaintiff's request for attorneys' fees and costs.

"'The most critical factor' in determining the amount of a fee award 'is the degree of success obtained.'" *Marctec, LLC v. Johnson & Johnson*, 2010, WL 680490, at *8 (S.D. Ill. Feb.

23, 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). 7-Eleven achieved all of its principal objectives in this litigation by obtaining (1) a preliminary injunction order restoring possession of the Store to 7-Eleven, (2) the dismissal of Defendants' counterclaims, and (3) an award of $115,921.17 owed to 7-Eleven by Spear and Vianna at the summary judgment stage. As a result, and pursuant to her Guaranty, Spear is ordered to pay to 7-Eleven the attorney's fees and costs incurred in this matter from October 2010 through and including December 2011.

**III.    Conclusion**

For these reasons, the Court grants Plaintiff's supplemental request for attorneys' fees and costs [102 & 121]. The Court previously concluded that damages in the amount of $115,921.17 are due and payable to 7-Eleven. Plaintiff also is entitled to its attorneys' fees in the amount of $233,706.91 pursuant to Spear's Guaranty. The Court will enter judgment in favor of Plaintiff and against Defendants in the amount of $349,628.08.

Dated: April 25, 2012                                      _____
                                                           Robert M. Dow, Jr.
                                                           United States District Judge