**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| 7-ELEVEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-6697 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| VIOLET SPEAR and VIANNA, INC., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff 7-Eleven, Inc. filed suit against Defendants Violet Spear and Vianna, Inc. (collectively "Defendants") seeking legal and equitable relief from Defendants concerning the termination of a franchise agreement between the parties. The Court granted summary judgment in favor of Plaintiff 7-Eleven and awarded attorneys' fees and costs. On April 25, 2013, the Court entered a final judgment, and on May 28, 2013, Defendant Violet Spear appealed. On June 4, 2013, the Court received a copy of the motion to proceed on appeal *in forma pauperis* that Defendant Spear improperly filed with the Court of Appeals. For the reasons stated below, the Court denies Defendant Spear's motion for leave to proceed on appeal *in forma pauperis* [133].

**I. Background**

The Court set forth in detail the factual background its May 11, 2012 opinion granting summary judgment in favor of 7-Eleven and only briefly recounts that history here. 7-Eleven is the owner of certain federally registered trademarks and service marks, including 7-Eleven® (the "7-Eleven Marks"), which are used in connection with the operation of authorized 7-Eleven Stores. Vianna is a former 7-Eleven franchisee that operated a 7-Eleven Store in Evanston,

Illinois. Violet Spear is the owner and sole-shareholder of Vianna. On March 14, 2008, 7-Eleven and Spear entered into a written franchise agreement (the "Franchise Agreement"), pursuant to which 7-Eleven granted Spear for an initial fifteen (15) year term, a franchise to operate a 7-Eleven store at 817 Davis Street in Evanston, Illinois (the "Store") and licensed Spear to use the 7-Eleven Marks in operating the franchise (the "Franchise Agreement"). Spear assigned the Franchise Agreement to Vianna, a corporation of which she was sole shareholder, but remained liable for all Vianna's obligations under the Franchise Agreement pursuant to a written guaranty (the "Guaranty"). Spear also entered into a security agreement with 7-Eleven (the "Security Agreement"), under which she granted 7-Eleven a security interest in the equipment, fixtures, goods, inventory and proceeds of the Store.

    7-Eleven terminated the agreement effective September 27, 2010, and demanded possession of the store, equipment, and inventory as provided in the franchise agreement and related agreements. However, Defendants did not surrender possession of the Store, equipment and inventory, and continued to use the 7-Eleven Marks in connection with the operation of the Store. As a result, 7-Eleven filed its complaint in this action on October 18, 2010 and a motion for preliminary injunction on October 19, 2010. On March 3, 2011, the Court granted 7-Eleven's motion for preliminary injunction and ordered Defendants to, among other things, (i) immediately surrender possession and control of the premises and facilities at 817 Davis Street in Evanston, and (ii) cease using 7-Eleven's trademarks and service marks. [50 at pp. 15-16] Defendants refused to comply with the preliminary injunction order and only surrendered possession of the store on March 9, 2011, after the Court held that they were in contempt of the preliminary injunction order.

Plaintiff then moved for summary judgment [102], which the Court granted. Following the entry of summary judgment in its favor,[1] 7-Eleven sought to recover from Spear the attorneys' fees and costs that 7-Eleven incurred in this matter pursuant to her Personal Guaranty and Assumption Agreement ("Guaranty"). Spear expressly agreed in her Guaranty to pay to 7-Eleven the reasonable attorneys' fees and costs it incurred in collecting any liabilities or obtaining performance of any obligations under the Franchise Agreement or the Guaranty.[2] In responding to 7-Eleven's request for attorneys' fees, Spear ignored her Guaranty entirely. Similarly, nowhere in Spear's response did she argue that the attorneys' fees and costs that 7-Eleven sought to recover in this action were not incurred seeking to collect amounts due and owing from Defendants to 7-Eleven under the Franchise Agreement and Guaranty and to obtain Defendants' compliance with their post-termination obligations under the Franchise Agreement and Guaranty. Nor did Spear challenge the reasonableness of the amount of attorneys' fees that 7-Eleven seeks, except that she requested that the amount that 7-Eleven sought for the time period that she was representing herself *pro se* "be waived or reduced" because, according to Spear, it should not have taken much "skilled lawyering" to litigate against a *pro se* party.[3]

---

[1] Despite asking for and receiving a lengthy extension of time to respond to Plaintiff's motion for summary judgment and being given over two and a half months to respond to Plaintiff's motion for summary judgment, Defendant never responded to Plaintiff's summary judgment motion.

[2] Spear's obligations under the Guaranty are independent of whether Spear or Vianna would be required to reimburse 7-Eleven for its attorneys' fees and costs under the Lanham Act. Defendant did not pursue damages or fees and costs under the Lanham Act.

[3] Defendants were represented by counsel for approximately 15 months, at which point the Court allowed defense counsel to withdraw. The Court advised Defendants that it would be "incumbent on the corporate Defendant to obtain substitute counsel if it wishes to proceed with this litigation" and gave Defendant Vianna almost two months to obtain replacement counsel prior to entering default against Vianna.

3

Finding Defendant's arguments to be unpersuasive, the Court granted 7-Eleven's request for attorneys' fees and costs. Spear's appeal followed.

**II.     Analysis**

28 U.S.C. § 1915 generally governs *in forma pauperis* proceedings. A party may commence an appeal without prepayment of fees under 28 U.S.C. § 1915(a) if he is indigent and the appeal is taken in good faith. To establish indigency under § 1915(a)(1), a party must submit an affidavit including a statement of all assets which demonstrates that he is unable to pay the filing fee or give security therefor. The affidavit must also "state the nature of the * * * appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). Federal Rule of Appellate Procedure 24 sets forth similar requirements. Pursuant to Rule 24(a)(1), "a party who desires to appeal *in forma pauperis* must file a motion in the district court. The party must attach an affidavit that: (A) shows in the detail prescribed by Form 4 of the Appendix of Forms the party's inability to pay or to give security for fees and costs; (B) claims an entitlement to redress; and (C) states the issues the party intends to present on appeal." To establish good faith, which is also required both by 28 U.S.C. § 1915(a)(3) and Rule 24(a)(4)(B), a party seeking leave to appeal *in forma pauperis* must demonstrate to the district court that "a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000); see also *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000).

Defendant Spear seeks permission to appeal the Court's orders of April 25, 2013, without prepayment of fees and costs. The Court previously denied Defendant permission to proceed *in forma pauperis* in the district court proceedings. [101 at pp. 2-3] In denying Defendant's prior motion, the Court noted that Defendant Spear's IFP application stood in stark contrast to her franchise application, which was submitted as an exhibit and considered in ruling on Plaintiff's

motion for a preliminary injunction. In her franchise application, she represented that, as of October 8, 2007, she had $300,000 in cash on hand and in banks, had a net worth of $1,865,000, and had an annual investment income of nearly $400,000. She also claimed thirty years of experience and successes in the hospitality industry. Given these representations, the Court concluded that the representations in her IFP application—almost identical to the representations in her current IFP application—were difficult to take at face value and could not be reconciled with other record evidence. The Court noted that if Defendant Spear wished to explain the discrepancies between her IFP application and her franchise application, she was free to do so, but that any subsequent IFP applications must contain a detailed explanation regarding what happened to the various resources at her disposal four years ago. The Court further noted that without the additional explanation of how her prior financial situation devolved into her current one, the Court would not consider any subsequent application.[4] In her present IFP application, Spear does not attempt to explain the discrepancies between her IFP application and her franchise application. For this reason alone, denial of her motion to proceed on appeal *in forma pauperis* is warranted.

    Moreover, Defendant Spear's appeal is frivolous and, like much of her conduct in this litigation, appears to be motivated by bad faith. She has failed to set forth specific portions of the Court's rulings that she wishes to challenge; instead, she maintains that she was not given an adequate opportunity to present material facts and defenses. The record wholly belies that assertion. First, her retained counsel filed several motions and briefs asserting Defendants' position and attempting to secure a favorable result for Defendants, despite the myriad of legal

---

[4] The Court also cautioned Defendant Spear that courts have sanctioned applicants with monetary penalties for misrepresentations on an IFP application. See *McRoyal v. Commonweath Edison Co.*, 2007 WL 164221, at *2 (N.D. Ill. Jan. 17, 2007).

problems created by Defendants' conduct. At the time that Spear's attorney withdrew in March 2011, her attorney had already, among other things, (1) filed an answer and counterclaim on her behalf, (2) filed an opposition to 7-Eleven's motion for preliminary injunction, (3) filed an opposition to 7-Eleven's motion to dismiss Spear's counterclaims, and (4) appeared in Court on two occasions regarding 7-Eleven's first motion for rule to show cause why Spear should not be held in contempt and sanctioned. To the extent that Spear attempts to imply that she was somehow an innocent victim in this proceeding who could not obtain an attorney despite her best efforts, the history of this case reveals a much different story. As the Court noted in its March 8, 2011 minute entry, there was a "mutual agreement for a parting of the ways between Defendants and their current counsel."

Moreover, the Court provided Spear with numerous opportunities to obtain new counsel in this matter, but Spear failed to do so, presumably for the very same reason that she ended her relationships with her previous attorneys: she disagreed with the legal advice that those attorneys were providing to her. The Court did not order Spear to proceed by herself or state that she could decide whether to get an attorney for the corporation. To the contrary, the Court made it clear to Spear (on several occasions) that she (in her individual capacity) may proceed *pro se*, but that Vianna (given its corporate form) was required by Supreme Court precedent to have an attorney if it wished to proceed with the litigation. See *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–02 (1993) ("a corporation may appear in the federal courts only through licensed counsel"); *American Taxi Dispatch, Inc. v. American GSS Limo, Inc.*, 2011 WL 291095, at *1 (N.D. Ill. Jan. 27, 2011).

Although the Court provided Spear with several opportunities to retain a new attorney, she never took advantage of any of those opportunities, and instead used those opportunities as

means to delay the proceedings, which caused 7-Eleven to incur more attorneys' fees. For example, after the case was referred to Magistrate Judge Brown for a settlement conference (upon Spear's request), and because Spear represented to Judge Brown that she would prefer legal representation at the settlement conference, Judge Brown continued the matter on two occasions in an attempt to locate an attorney who could represent Spear solely for purposes of the settlement conference. But after Judge Brown located an attorney who was willing to represent Spear at the settlement conference, Spear failed to contact the attorney. The settlement conference was eventually scheduled during the third status hearing before Judge Brown—months after the case was referred to Judge Brown.[5]

Defendant Spear has failed to set forth any viable legal or factual bases for her appeal, nor can the Court conceive of any. Accordingly, the Court cannot conclude that "a reasonable person could suppose that the appeal has some merit." *Walker*, 216 F.3d at 632. Furthermore, Spear never has accounted for the discrepancies between the assets reported on her IFP application and the assets listed in her franchise application. For these reasons, denial of her motion to proceed on appeal *in forma pauperis* is warranted.

## III. Conclusion

For these reasons, the Court denies Defendant Spear's motion for leave to proceed on appeal *in forma pauperis* [133].

Dated: June 7, 2013

_____
Robert M. Dow, Jr.
United States District Judge

---

[5] The Court has set forth just a few examples of Defendant Spear's dilatory and recalcitrant conduct during the pendency of the district court proceedings.